The rule followed by the Indiana court is substantially that announced by the Supreme Court of Connecticut in Southard v. Assurance Company, 34 Conn. 574, Fed. Cas. No. 13,182, from whose views on the subject the Supreme Court of the United States expressed its dissent in the Barry Case.

We are unwilling to follow the holding in the Semancik and Elsey Cases, and are content to rest the decision upon the grounds we have stated.

The question is an important one, and we have been deeply concerned in its correct decision. It challenges careful thought, and, sensible of its difficulty in certain phases, that we have endeavored to give it. That which is sound upon principle ought to be the law; and, believing that the conclusion reached is thus supported, it is adopted as our decision of the question.

The judgments of the Court of Civil Appeals and the District Court are accordingly reversed. It is ordered that judgment be entered for the plaintiff in error for the amount of the policy, with the statutory damages and attorneys' fees of $225, agreed to be reasonable in amount, with legal interest from the date of the judgment of the district court.

---

BOGART et ux. v. COWBOY STATE BANK & TRUST CO. et al.  (No. 747.)

(Court of Civil Appeals of Texas.  Amarillo. Oct. 30, 1915.  On Motion for Rehearing, Dec. 4, 1915.  Further Rehearing Denied Jan. 26, 1916.)

1. APPEAL AND ERROR ⟨⟩1071 — FINDINGS — IMMATERIAL ISSUE.

In an action on a note, where a judgment was not rendered upon the original note, but upon the renewal, it was immaterial when the holder acquired the original note if it obtained the renewed note for value without notice before maturity, and the issue as to whether a former holder had indorsed the note more than two months after maturity was immaterial, so that the trial court's failure to find thereon was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ⟨⟩ 1071.]

2. TRIAL ⟨⟩397 — REQUESTED FINDINGS — FINDINGS MADE.

The refusal to make a requested finding was not error, where the trial court in another finding fully stated the matter requested to be found.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 940–945; Dec. Dig. ⟨⟩397.]

3. BANKRUPTCY ⬅=425 — DISCHARGE — DEBT NOT SCHEDULED.

Where it did not appear that a bankrupt scheduled a debt, and the creditor had no actual notice of the bankruptcy proceedings, the bankrupt was not discharged from liability on such debt.

[Ed. Note.—For other cases, see Bankruptcy, Century Dig. § 775; Decennial Dig. ⬅= 425.]

4. BANKRUPTCY ⬅=395 — DECREE SETTING ASIDE HOMESTEAD—PARTIES BOUND.

A creditor not a party to the debtor's bankruptcy proceedings was not bound by the decree of the federal court setting aside to the bankrupt and his wife certain lands as a homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 658; Dec. Dig. ⬅=395.]

5. BANKRUPTCY ⬅=395—EXEMPT PROPERTY—JURISDICTION.

Exempt property is never really in the bankruptcy court, nor is the owner divested of his title where he properly urges his claim for exemption, as the bankruptcy court has no jurisdiction of it except to set it aside as exempt property, and as the rights of the lien creditors with reference to it must be determined in the state courts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 658; Dec. Dig. ⬅=395.]

6. HOMESTEAD ⬅=115—TRUST DEED—EXEMPTION.

Whether land claimed as a homestead is exempt from the operation of a trust deed must be determined by the conditions existing when the deed was given.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 183, 184, 186–190; Dec. Dig. ⬅= 115.]

7. HOMESTEAD ⬅=181—CONTINUANCE—PRESUMPTION AND BURDEN OF PROOF.

When property has been impressed with a homestead character it will be presumed to so continue until its use as such has been discontinued with the intention not to use it as a home, and the burden of proof rests upon the one asserting the abandonment.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 351–353; Dec. Dig. ⬅=181.]

8. HOMESTEAD ⬅=181—ABANDONMENT—EVIDENCE.

Certain and conclusive evidence of abandonment, with no intention to return and claim the exemption, is required before a homestead, once occupied as such, can be subjected to a forced sale.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 351–353; Dec. Dig. ⬅=181.]

9. HOMESTEAD ⬅=162 — ABANDONMENT — INTENTION.

A farm occupied as a homestead does not lose that character when abandoned by the owner partly on account of ill health, with the intention of returning at a later date.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 315–319; Dec. Dig. ⬅=162.]

10. HOMESTEAD ⬅=168—"TEMPORARY RENTING" — EFFECT — CONSTITUTIONAL PROVISIONS.

A lease of land, including the part which had been used as a homestead, for a term of five years, in connection with the homesteaders' disposition of their farm in another state prior to the execution of a deed of trust on the land in this state, was a temporary renting within Const. art. 16, § 51, providing that any temporary renting of a homestead shall not change its character when no other homestead had been acquired.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 333, 343; Dec. Dig. ⬅=168.]

11. EVIDENCE ⬅=589—SUFFICIENCY—PARTIES.

In an action on a note and to foreclose a deed of trust, where the defendants claimed a homestead in part of the land, the trial judge was not bound to believe their statements.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. ⬅=589.]

### On Motion for Rehearing.

12. APPEAL AND ERROR ⬅=1071—TRIAL ⬅= 395—FAILURE TO FILE FINDINGS—EFFECT.

The trial court's failure to file findings and conclusions is not cause for which the courts have reversed judgments when there is a statement of facts; but a conclusion of law going to the merits of the case must be supported by a corresponding finding of facts.

[For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ⬅=1071; Trial, Cent. Dig. §§ 927–934, 939; Dec. Dig. ⬅=395.]

13. APPEAL AND ERROR ⬅=1071—TRIAL ⬅= 395 — CONCLUSION OF LAW — FINDING TO SUPPORT.

Where the trial court, in an action on a note and to foreclose a deed of trust in which the defendants claimed a homestead in part of the land, did not find that defendants had abandoned the homestead, but merely recited their testimony thereon without any finding, and concluded as matter of law that they had abandoned it prior to their execution of the deed of trust, such conclusion, without a finding on which it might have been based, made the judgment rendered in accordance therewith erroneous, so that it would be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ⬅= 1071; Trial, Cent. Dig. §§ 927–934, 939; Dec. Dig. ⬅=395.]

14. BANKRUPTCY ⬅=436—DISCHARGE—DEBTS SCHEDULED—BURDEN OF PROOF.

The burden of proving that a creditor's debt was duly scheduled in the debtor's bankruptcy proceeding, and that the creditor had either statutory or other actual notice of the proceeding, rested upon the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 840–842, 865; Dec. Dig. ⬅= 436.]

Appeal from District Court, Fisher County; Jno. B. Thomas, Judge.

Action by Cowboy State Bank & Trust Company against A. R. Bogart and wife, in which the National Stock Yards Bank of Ft. Worth and the Ft. Worth National Bank intervened, seeking judgments against the defendants Bogart. Judgment for interveners, and that defendants take nothing on their plea of homestead. Defendants appeal. Reversed and cause remanded.

Higgins & Hamilton, of Snyder, and L. H. McCrea, of Roby, for appellants. Jno. W. Woods, of Rotan, and Bryan, Stone & Wade, of Ft. Worth, for appellees.

HALL, J. Several parties and issues were involved in this suit, but the only appeal is by A. R. Bogart and wife from that part of the judgment denying them the right to their homestead of 200 acres out of certain lands

upon which liens were foreclosed. It will therefore not be necessary to make a full statement of the pleadings and facts. The Cowboy State Bank & Trust Company sued on a note signed by A. R. and W. R. Bogart, executed May 2, 1911, in the sum of $7,251, due November 2d following, and stipulating for 10 per cent. interest from maturity and 10 per cent. attorneys' fees. Appellee Bank & Trust Company also prayed for foreclosure of a deed of trust lien on certain lands in Kent county given to secure said note and executed about four months after the date of the note.

The National Stock Yards Bank of Ft. Worth intervened and prayed for judgment upon a note for $1,000 against the same parties, which was secured by deed of trust on part of the lands described in the first-named deed. The interest of this intervener was afterwards acquired by the Ft. Worth National Bank, which on July 28, 1914, also filed a plea of intervention, praying judgment upon a note for $1,500, executed by A. R. Bogart to F. P. Shultz, and indorsed by Shultz, without recourse, to the Cowboy State Bank & Trust Company. This note was secured by deed of trust upon all of the land in controversy. This note was, after its execution, indorsed by the Cowboy Bank & Trust Company to the Ft. Worth National Bank. The Ft. Worth National Bank also sought to recover upon a note for $7,460, which was alleged to be a renewal of and substitution for the first above described note for $7,251. Several individuals were made parties to the suit and their rights determined by the judgment, but, since there is no complaint upon their part, it is not necessary to state the issues adjudicated as to them. As stated above, A. R. Bogart and wife claimed 200 acres as a homestead out of the land upon which the deeds of trust were given. The Ft. Worth National Bank held the notes secured by the deeds of trust as collateral for a debt of $5,560.60, due it by the Cowboy State Bank & Trust Company. The $1,500 note above mentioned represented part of the purchase money for all the lands involved. That portion of the judgment of which complaint is made is as follows:

"(10) It further appearing to the court that the defendants, A. R. Bogart and wife, Ethel Bogart, have no homestead right in or claim to any of the above-described lands, it is therefore, ordered, adjudged, and decreed by the court that said named defendants take nothing on their plea here, it being approved and adjudged by the court that the two hundred acres so claimed by them and described in their pleadings herein is subject to all of the liens found in favor of the interveners, Ft. Worth National Bank and the Stock Yards National Bank."

[1] By their first assignment of error, appellants insist that the court erred in refusing to find as a fact that a certain indorsement on the note for $7,251 was made by the Cowboy State Bank & Trust Company more than two months subsequent to its ma-

turity, and that therefore the Ft. Worth National Bank could not be an innocent purchaser of said note for a valuable consideration before maturity.

Judgment was not rendered upon the original note, but upon the renewal. It is therefore immaterial when the Ft. Worth National Bank acquired the original note, if it obtained the renewal for value without notice before its maturity. The failure of the trial court to find upon an immaterial issue is not reversible error.

Under the second assignment appellants complain of the refusal of the court to find that no money was advanced to Bogart and wife when the deed of trust dated October 19, 1912, was executed to secure the original note dated May 2d, 1911. Appellants assert in their assignment that this was a material finding. The deed of trust itself recites that it is given to secure the original note, and, so far as we are able to see, no claim is made by any of the appellees that the lien was given to secure any other debt. It is true that the deed of trust recites that it should be a security for any indebtedness thereafter accruing, but no proof was made of any further indebtedness. The pleadings of the parties set out without contradiction the debt it was given to secure, and no witness seems to have denied it. We think, upon a fair construction of the twelfth finding, the court has fully complied with the request of appellees on this point.

[2] The third assignment is also without merit, since the court, in its seventh finding of fact, has stated fully the matters which appellants requested to be found.

[3] October 12, 1912, Bogart was duly adjudged a bankrupt, and the decree discharging him was entered June 7, 1913. The federal court set apart to him and his wife in that proceeding, the 200 acres as a homestead. The evidence does not show whether Bogart did or did not schedule appellee's debts, and the Ft. Worth National Bank had no actual notice of the bankruptcy proceedings. Under this state of facts the debtor of course could not be discharged from liability upon appellees' claims.

[4] Since appellee was not a party to the bankruptcy proceedings, it is not bound by the decree of the federal court setting aside to Bogart and wife the land as a homestead.

[5] The rule is that exempt property is never really in the bankruptcy court, nor is the owner divested of his title where he properly urges his claim for exemption. The court has no jurisdiction of it except to set it aside as exempt property. The rights of lien creditors with reference to it must be determined in the state courts. First Remington on Bankruptcy, §§ 1022, 1024; 1 Loveland on Bankruptcy, p. 88; Brooks v. Eblen (Ky.) 106 S. W. 308, and authorities there cited.

By the remaining assignments, save one, appellants assail the action of the court in

foreclosing the deed of trust dated October 19, 1911, upon that portion of the land designated by them as a homestead, and insist that the court erred in its finding of fact bearing upon this issue, and that the conclusions of law are neither supported by the findings nor by the evidence adduced. We will dispose of these assignments by a general discussion of the rules of law applicable to the facts rather than by a consideration of the assignments in detail.

Bogart and wife used the land in controversy as a homestead for several years prior to September 1, 1910. It was shown without controversy in behalf of appellees that on the last-named date Bogart leased the entire 1,470 acres, including the homestead, to one Roy for a period of five years; that on or about the 1st of October following he moved with his family to New Mexico, where three months later he purchased a small farm of 120 acres, upon which he resided and made a crop in 1911, and rendered the premises for taxes. After residing there nine months he sold the farm, his vendee assuming the unpaid purchase money, and moved to El Paso county, Tex., where he has since worked for wages for his father-in-law. That the deed of trust was executed October 19, 1911, following the sale of his New Mexico farm; that the sale was made several days before the execution of the deed of trust, but was not duly conveyed until October 18, 1911. The deed of trust contains a recital disclaiming any homestead interest in or to any of the 1,470 acres, but describes no property in that portion of the instrument left blank in the printed form for that purpose.

Opposed to the theory of abandonment, appellants both testified that they owned no other land except the 200 acres and had never owned any other homestead since they occupied the land in controversy; that in leaving Texas they never intended to abandon their home, but always intended to return and reoccupy it at the expiration of the five years lease; that their removal to New Mexico was on account of the husband's ill health; that upon arriving there they endeavored to lease a farm, and, failing in this, they were forced to buy the 120 acres in order to have land to work for that year; that they claimed their exemption in the bankruptcy proceedings instituted by the husband and had their home set aside to him; that they collected the rents from the entire 1,470 acres until the husband filed his petition in bankruptcy, and since then had received rents from the 200 acres only; that the husband never voted in New Mexico, nor had he ever voted in El Paso county.

[6] Whether or not land claimed as a homestead is exempt from the operation of a trust deed must be determined by the condition existing at the time the deed is given. Crebbin v. Moseley, 74 S. W. 815; Gaar-Scott Co. v. Burge, 49 Tex. Civ. App. 599, 110 S. W. 181.

[7, 8] When property has been impressed with the homestead character it will be presumed to so continue until its use as such has been discontinued with the intention not to again use it as a home. Archibald v. Jacobs, 69 Tex. 256, 6 S. W. 177; Drought v. Stallworth, 45 Tex. Civ. App. 159, 100 S. W. 188. Certain and conclusive evidence of abandonment, with no intention to return and claim the exemption, is required before a homestead, once occupied as such, can be subjected to forced sale (Cross v. Everts, 28 Tex. 523; Thomas v. Williams, 50 Tex. 269; Gaar-Scott Co. v. Burge, supra; Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164; Rollins v. O'Farrell, 77 Tex. 90, 13 S. W. 1023); and the burden of proof rests upon the one asserting the abandonment (Cooper v. Basham [Sup.] 19 S. W. 704; Graves v. Campbell, 74 Tex. 576, 12 S. W. 238; Harle v. Richards, 78 Tex. 80, 14 S. W. 257).

[9] A farm occupied as a homestead does not lose that character when abandoned by the owner, partly on account of ill health, when the abandonment is accompanied with the intention of returning at a later date. Reinstein v. Daniels, 75 Tex. 640, 13 S. W. 21; White v. Wadlington, 78 Tex. 159, 14 S. W. 296; Gaar-Scott Co. v. Burge, supra; Jones v. Robbins, 74 Tex. 615, 12 S. W. 824.

[10] The lease in the instant case was for a fixed period, and, when taken with the testimony of Bogart, is such a temporary renting as brings it within the following provision of the Constitution, art. 16, § 51: "Provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." Oppenheimer v. Fritter, 79 Tex. 99, 14 S. W. 1052. In this connection, it will be remembered that Bogart and wife had disposed of the farm in New Mexico prior to the execution of the deed of trust under which appellees claim.

The deed of trust was executed to secure a pre-existing debt. The issues of estoppel and fraud are not raised either by the pleadings or the evidence. The court did not find as a fact what were the intentions of Bogart and wife when they left the land in controversy, but concluded as a matter of law that they had abandoned it prior to the execution of the deed of trust, and at that time they had acquired a homestead in New Mexico. While the conclusion is unsupported by any finding, the rule seems to be that when there is a statement of facts in the record, and it is not made clear that a failure to file any findings and conclusions at all has injured appellant, it is no cause for reversal. Banfield v. Emery, 177 S. W. 952.

[11] There is a sharp conflict in the testimony upon the issue of intention as shown by the statement of facts before us; but the evidence is sufficient to support the judgment if the testimony of Bogart and wife be disregarded entirely. Being the parties in inter-

est, the trial judge was not bound to believe their statements, and he evidently did not do so. Steeley v. Tex. Imp. Co., 55 Tex. Civ. App. 463, 119 S. W. 319.

So these assignments presenting mainly questions of fact are overruled and the judgment is affirmed.

### On Motion for Rehearing.

[12, 13] Appellant insists that we erred in holding that, where there is a statement of facts in the record, the failure of the court to find a material fact necessary to support a conclusion of law is not reversible error. Upon further investigation, we find that this contention is correct. While it is the rule that the failure of the trial court to file findings and conclusions is not cause for which the courts have reversed judgments, when there is a statement of facts, the rule is equally well established that a conclusion of law going to the merits of the case must be supported by a corresponding finding of fact. As stated in the original opinion, the court did not find that Bogart and wife had abandoned the homestead, but merely recited their testimony upon that point without a finding either way; but did conclude as a matter of law that they had abandoned it prior to the execution of the deed of trust. There being no finding of fact upon which this conclusion could have been based, a judgment in accordance with such conclusion is erroneous and must be reversed. Edwards v. Chisholm (Sup.) 6 S. W. 558; Sanders v. Sheran, 66 Tex. 656, 2 S. W. 804; Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164; Zachariae v. Swanson, 77 S. W. 627; West End Town Co. v. Grigg, 93 Tex. 456, 56 S. W. 49; Texas Midland Ry. Co. v. Johnson, 65 S. W. 388.

Appellant further contends in the motion that we erred in the original opinion with reference to the effect of the decree rendered in the bankruptcy proceedings in the federal court. We do not assent to this contention. It is expressly provided by section 17 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1913, § 9601]) that a discharge shall release a bankrupt from all of his provable debts except such as have never been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had actual notice or knowledge of the proceedings in bankruptcy.

[14] The burden of proving that the bank's debt in the instant case was duly scheduled, and that the bank had either statutory or other actual notice of the proceedings, rested upon appellant. Fields v. Rust, 36 Tex. Civ. App. 350, 82 S. W. 331. As stated, in Third Ruling Case Law, p. 338, § 155:

"In as much as a discharge is for the benefit of the bankrupt, and the omission of a claim from the schedule is due to his default, it is said to be well settled that the burden is upon him to prove that the omitted creditor had the requisite notice or knowledge of the proceedings."

Unless appellee's claim was properly scheduled, or appellee had actual notice of the bankruptcy proceedings in time to prove its claim, they would certainly not be bound by the judgment in any particular. Third R. C. L. "Bankruptcy," § 155.

The motion for rehearing is overruled in part and granted in part, and the judgment is reversed and the cause remanded.